# Cincinnati Grain Company v. Louisville & Nashville Railroad Company.

(Decided January 16, 1912.)

## Appeal from Kenton Circuit Court
(C. C. L. & E. Div.).

Carriers—Liability of.—It was a custom between a grain company and the railroad company that cars loaded at the elevator in Latonia should not be routed from there, but taken over to the yards in Covington and there routed, a bill of lading being given in Latonia in the usual form showing that the car was to be taken to a certain track in Covington. Held, that the cars were at the risk of the carrier and held as carrier from the time they were delivered to it at the elevator and the bill of lading given, where the car was lost before it reached the Covington track, although the final destination of the car was then unknown.

R. G. WILLIAMS and MEYERS & HOWARD for appellant.

FRED P. CALDWELL, S. D. ROUSE and B. D. WARFIELD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

The Cincinnati Grain Company has its office in Cincinnati. Its elevator is located at Latonia on the line of the Louisville & Nashville Railroad Company. The railway company constructed and maintained side tracks from its main tracks to the elevator, one being immediately adjacent to it. Empty cars were placed on this track by the railroad company to be loaded by the grain company, and shipped over the lines of the railway company and its connections. On October 30, 1909, a car was placed on the side track by the railway company and loaded with wheat which was intended to be shipped to Winchester, Kentucky. The car was not taken off the side track by the railroad company and the next day the elevator burned and this car was also burned. The grain company brought this suit against the railway company to recover for the loss of the wheat on the ground that it had been delivered to it and was held by it as a common carrier. The railroad company defended the action insisting that the car was not held by

it as a carrier and that it had not been delivered to it for transportation. The case was heard before a jury and at the conclusion of the evidence on both sides, the jury, were by consent of parties, discharged and the case was submitted to the court on the law and the facts. The court entered judgment in favor of the railroad company; the grain company appeals.

The facts of the case are these: The car was loaded about 4:30 p. m. on Saturday. It was the custom of the railroad company to take out the cars about twice a day. The next day the manager of the elevator seeing the car had not been taken out, called the attention of the railroad yardmaster to it, and he promised to take it out, but failed to do so on account of a congestion in the yards that day. According to the evidence for the plaintiff the railroad company refused to route cars from this side track, but required them to be sent over first to its yards in Covington, and to be routed from there, so that it could control the routing and route the cars over its own lines. The evidence for the defendant is to the effect that the railroad company did not require this but that it was simply a custom to do this for convenience. When the car was loaded and ready, a receipt was prepared which was signed by the railroad agent, and this receipt was sent over to the office of the grain company in Cincinnati. One of its officers would then take it to the office of the railroad company and obtain a bill of lading for the goods, and when this bill of lading was issued, the final destination of the car would be given. In the receipt given at Latonia only the track at Covington on which the car was to be placed was indicted. If the car was to go south, it was marked "southbound," or if east "eastbound," etc. The receipt which was given for this car is in these words:

Standard Form Straight Bill of Lading.

LOUISVILLE & NASHVILLE RAILROAD COMPANY.

Shipper's No.————

Straight Bill of Lading—Original—Not Negotiable

........................:.......Agent's No. ..........

Received, subject to the classifications and tariffs in effect on the date of issue of this Original Bill of Lading, at ........CINCINNATI GRAIN CO. .........10-30

.......... 1909. .................................

from .......... LATONIA .........., the property

described below in apparently good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns.

The rate of Freight from ...........................
to .................. is in cents per 100 lbs.

.......................................................
Consigned to ........... SOUTH BOUND ............
Destination ........State of ........County of.......
Route ..... K C ..........Car Initial T BV.........
Car No. 2173 .......................................

.......................................................
No.   Description of articles   Weight   Class or   Check
pack-  and special Marks                 Rate   Column
ages . ................................................
........ WHEAT ...............................  ....
.......................................................
.......................................................
.......................................................
Per E. H. MEYER.............Agent.

On the back of the paper are the following words:
"Conditions.

"Sec. 1.  The carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto, except as hereinafter provided."

(Here follows a number of provisions usual in bills of lading, providing against a liability on the part of the carrier none of which are material here.)

Among the other conditions are these:

"Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then

within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable.

"Sec. 10. Any alteration, addition or erasure in this bill of lading which shall be made without an indorsement thereof hereon, signed by the agent of the carrier issuing this bill of lading, shall be without effect, and this bill of lading shall be enforceable according to its original tenor."

The above paper is made out on a printed blank, the words placed in capital letters being written in long hand. The southbound track in Covington was a mile or a mile and a half from the elevator. It will be observed that in the writing no consignee is named, and the only thing stated about the carriage of the car is that it is consigned to southbound. It is insisted for the railroad company that as the final destination of the wheat is not given, and it could not know where the wheat was to go, it is not liable for the loss of the car before it was removed from the elevator. Thus in Basnight v. Railroad Company, 111 N. C., 592, the cars were loaded, the doors were locked, but the railroad company was not notified that they were ready, the name of the consignee was not given, and the bill of lading had not been issued. It was held that the car was not yet ready for transportation; that the strict liability of a common carrier arises only with the duty of immediate transportation, and this duty does not arise so long as anything remains to be done by the consignor before the goods can be started on the route to their destination. Practically the same ruling was made in Mo. Pac. R. R. Co. v. Riggs, 10 Kan. App., 570; Schmidt v. R. R. Co., 63 N. W., 1057; St. Louis, &c., R. R. Co. v. Citizens Bank, 112 S. W., 157; C. B. & Q. R. R. Co. v. Powers, 73 Neb., 816; Kansas City, &c., R. R. Co. v. Cox, 108 Pac., 380.

But we do not see that any of these cases is in its facts similar to this case, or that the rule there applied should be applied here. They are all cases in which for one reason or another the car was not ready to be moved by the railroad company. The car in this case was locked and sealed and the bill of lading for it was issued by the railroad company. Nothing more was to be done by the consignor until the car was transported from the elevator in Latonia to the southbound track in Covington. The words "southbound" in the bill of lading had

a definite meaning according to the understanding of the parties. It referred to a definite point and was well understood. That the name of the consignee was not given was immaterial. The bill of lading obliged the carrier to take the car from Latonia to the point indicated in Covington. It is not material that the distance was only a mile or a mile and a half. The principle is the same whether it was one mile or one hundred miles. Nor is it material that when the car reached the point indicated it was to be routed to another point. The car was in the possession of the railroad company as a carrier when it received it for transportation from Latonia to Covington. The fact that this was not the final destination of the car does not affect the nature of the contract. It will be observed that by the written contract it is specified that that railroad company receives the property and agrees to carry it to its usual place of delivery at the destination indicated, that is, the southbound track in Covington. It will also be observed that by one of the stipulations on the back of the contract it is provided that the carrier shall be liable for any loss of the property or damage thereto, except as therein provided. The writing called a receipt in the testimony is a bill of lading in the usual form. If the carrier had carried this car of wheat to the southbound tract in Covington, and it had been destroyed while waiting there for the consignor to route it to its final destination, a different question would be presented. But this car was received at Latonia for transportation to a point in Covington under a written contract by which the railroad company as a carrier assumed liability for it, and the property was lost in its possession and before it was carried to the point indicated. The company is, therefore, liable. The circuit court erred in holding otherwise under the evidence.

It is insisted for the railroad company that the grounds for new trial are insufficient. The plaintiff asked for a new trial on the ground that the finding of the court was contrary to the evidence and contrary to the law. It is insisted that this ground for new trial is too general to be considered on appeal. Such an assignment is too general to raise any question as to specific errors committed by the court in the progress of the trial, as, in admitting or rejecting evidence or other like matters. But it is sufficient to raise the question whether the evidence warrants the judgment. The finding of the

court where the law and the facts are submitted to him will be treated as the verdict of a properly instructed jury where there is no separation of his findings of law and fact. But if it is palpably against the evidence, it will be set aside. There was no dispute in the evidence as to the facts except that the witnesses for the railroad company said that the railroad company did not require the cars to be shipped as it was and this difference in the evidence is not material. Upon the undisputed facts there was simply a question of law for the decision of the court, and his judgment, being unwarranted, may be reversed. (Excelsior Coal Co. v. Gatliff, 24 R., 682; Board of Trustees v. Morris, 24 R., 1420; C., N. O. & T. P. R. R. Co. v. Hansford, 125 Ky., 37.)

Judgment reversed and cause remanded for further proceedings consistent herewith.