## Phil Hollenbach Company v. Hollenbach, et al.

(Decided June 21, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1.   Master and Servant—Workmen's Compensation Act—Appeal.—
    —Under the Workmen's Compensation Act an appeal to the cir-
    cuit court is not commenced, or perfected, by filing, within twenty

days of the entry of the final order of the Compensation Board a petition in the office of the clerk of the circuit court, and the serving of copies of the petition on the respondent alone, but the appellant must also cause a summons to issue on the petition for appeal within twenty days, as directed by section 52 of the act.

2. Electricity—Action for Death—Presumptions.—In a case where a strong, able-bodied young man comes in contact with an uninsulated electrically charged wire, is thrown to the floor and is unable to disengage himself from the wire, and his companions, when they touch him, are thrown back by the current, and he dies under the current, the presumption arises that the accident was the cause of his death and this presumption will prevail unless overcome by evidence.

3. Master and Servant—Workmen's Compensation Act—Finding of Board.—The Board of Compensation is required to make a finding of fact in its award and this finding of fact, if supported by credible evidence, will not be disturbed by a court in review. The same rule will be applied to the finding of fact of the Board of Compensation as to a verdict of a properly instructed jury, and unless the finding be clearly, flagrantly and palpably against the weight of the evidence it will not be disturbed by a court.

4. Master and Servant—Workmen's Compensation Act—Accident— Use of Word.—The word "accident" as used in the compensation act, means something unusual, unexpected and undesigned. The definition, as laid down by this court in negligence cases, as an unexpected event happening without negligence, has no application to cases arising under this act. The word as employed in the act means, any unexpected or unusual event happening with or without negligence.

5. Master and Servant—Workmen's Compensation Act—Employment.—One who is washing, dressing and preparing himself on the master's premises at the close of the day's work to leave the premises is, in the meaning of the act, in the course of his employment. The period of going to and returning from work is not limited by the exact time when the workman reaches the scene of his labor and begins work, or when he ceases it, but includes a reasonable time, space and opportunity, before and after, while he is at or near his place of employment.

6. Master and Servant—Workmen's Compensation Act—Words and Phrases.—The words "arising out of" the employment, as used in the act, refer to the origin and cause of the accident, and the words "in the course of" the employment, to the time, place and circumstances under which it occurred.

7. Master and Servant—Workmen's Compensation Act.—An accident arises "out of" and "in the course of" the employment, if the employed is doing what a man so employed may reasonably do in the time during which he is employed and at the place where he may reasonably be during that time, and is something

the risk of which may have been contemplated by a reasonable person when entering the employment, as incidental thereto.

8. Negligence—Workmen's Compensation Act.—The rules of the common law in negligence cases do not aid in the construction or application of the Workmen's Compensation Act.

9. Statutes—Workmen's Compensation Act.—The act must be given a liberal construction, even though it be in derogation of the common law, in order to effectuate its purpose as gathered from the entire act.

DALLAM, FARNSLEY & MEANS for appellant.

DODD & DODD for appellees.

Opinion of the Court by Judge Sampson—Affirming.

This is the first appeal to reach this court from an award by the board which administers the Workmen's Compensation Act, and it presents many features which are entirely novel in our jurisprudence.

The Phil Hollenbach Company was engaged in the wholesale liquor business on Main street, in Louisville, at the time of the accident and death of Phil Hollenbach, Jr., in August, 1916. This firm was operating under the Workmen's Compensation Act of 1916, carrying indemnity insurance with the United States Fidelity and Guaranty Company, of Baltimore. More than five persons were regularly engaged by this company in the same occupation or business, as provided by the act, at the time of young Hollenbach's death. He was twenty-three years of age, married and the father of a child about three months old. His dependents, therefore, are the widow and infant child. He was earning sixteen dollars per week, and was foreman of a gang of four men who, with him, were employed in the basement. The company used electric lights for illuminating the basement and its different compartments, including the toilet. He had been engaged, as cellar foreman, by this firm for several years and was a strong, able-bodied, faithful and efficient employee. Upon the day of the accident he had been engaged in bottling wines and placing the same upon shelves in the basement. The weather being warm he wore very light clothing. A few minutes before six o'clock in the afternoon, which was the end of the period of labor, Hollenbach called to his fellow workmen and said: "Let's get ourselves ready to go home; call Bill Koelin and tell him not to forget to close the door." He then went to the wash basin, which was provided for the use

of the workmen in the basement, presumably for the purpose of washing himself, preparatory to going home. Immediately thereafter he gave a cry of distress, and his fellow-workmen responding to his cry, found him lying on the floor on his back across an uninsulated electrically charged wire, which passed up over the lavatory and over a wooden partition of the water-closet to a connection with a socket of a swinging electric light wire which came down inside of the water-closet. Hollenbach was not dead, and his companions undertook to remove him from off the wire, and in endeavoring to do so were themselves thrown back by the current. Finally some one had the presence of mind to turn the switch which broke the current. Hollenbach was still breathing, but unconscious. A physician was immediately called and every effort made to resuscitate Hollenbach but without result, and he shortly thereafter died. The floor where he was lying was wet as was also his clothing. Across his back the uninsulated wire charged with electricity had burned through his clothing and into the flesh to a depth of about one-sixteenth of an inch. No autopsy was held before the body was embalmed. The wire which carried the electric current which burned Hollenbach served no useful purpose to the Phil Hollenbach Company, and how it became connected with the electric light socket in the manner described is not proven in this record. Each of the workmen employed in the basement with Hollenbach testify that they did not know of the connection of the wire with the socket and had never observed it in that position, although they say that this wire had previously formed a coil spring and had been straightened out and was used in the basement for sulphurizing and cleaning barrels. It is suggested, but not proven, that either Hollenbach, or one of his associates, had sportively placed the wire in the electric light socket and brought it down over the wash basin so that when the water should be turned on a shock would be experienced by the person at the basin.

Immediately after the accident the electric light and power people made investigation to ascertain the voltage carried by the electric light wires in the basement at the time of the accident, and it was found to be only of a frequency of 114 volts. This, it is urged, was not sufficient to produce death in a man of the size and strength of Hollenbach unless he had a defective or weak heart.

True the weight of the evidence is to the effect that 114 volts of electricity will not ordinarily produce death where applied only for an instant, but it is insisted by the widow that the continuation of such voltage through the human body for the duration to which Hollenbach was subjected would produce death, and the evidence upon this point is sufficient to support the finding of the board that the death of Hollenbach resulted from an electric shock.

In October following the accident Anna Hollenbach, widow of the deceased, made application to the Workmen's Compensation Board of this state for an award under the provisions of the act. In doing so, she filed her claim with the board upon the printed application blank. The application set forth that Phil Hollenbach, Jr., was killed on August 11th, 1916, by reason of accident arising out of and in the course of his employment with the Phil Hollenbach Company. She claimed four thousand dollars for his death in addition to medical care and attendance. Shortly thereafter the Phil Hollenbach Company filed with the board of compensation its answer to the application, the first paragraph of which is a denial of its responsibility. The second paragraph of the answer is as follows:

"Further answering, defendant states that when the decedent, Phil Hollenbach, met his death at the time and date set out above, the said electric shock was not received by him by accident arising out of or in the course of his employment. Defendant states that the wire complained of was a loose wire which had been brought to the place of employment by the decedent, Phil Hollenbach, that it was an old coiled door spring which had been straightened out by the decedent, Phil Hollenbach, and that it was placed over and around the socket by the decedent, Phil Hollenbach, and that it was not necessary and was not in the course of his employment and was not so used, and that the said decedent, Phil Hollenbach, placed it there with the intention of connecting it with the faucet on the washstand, in order to play a practical joke on his fellow-employees, who would receive a shock when the water was turned on and the current thus completed. Defendant says that the current of electricity was not at the time more than 114 volts and that 114 volts current of electricity is not sufficient

and will not cause the death of a person, and that the death of said Phil Hollenbach was not caused by accident, and was not caused by the current of electricity coming from the socket, though the wire was around the same. Defendant states that the decedent, Phil Hollenbach, received the current of electricity and came to his death because of his own wilful misconduct or by a willfully self-inflicted injury, and it was not such an accident as is contemplated by the act known as the 'Workmen's Compensation Act,' for individual accidents in the state of Kentucky.

"Wherefore, having fully answered, this defendant prays to be dismissed hence, with its costs and all proper relief."

The affirmative allegations of the answer were duly traversed by the applicant. Thereafter, on November 9th, 1916, at the office of the board, in Louisville, testimony was heard. This evidence was taken in shorthand and has been transcribed and is now a part of the record in this court, having been certified by the board, as provided by section 52 of the act. This cause before the Workmen's Compensation Board was styled "Anna Hollenbach, plaintiff v. The Phil Hollenbach Company, defendant." After the hearing of the case before the board the United States Fidelity and Guaranty Company who issued the policy of insurance indemnifying the Phil Hollenbach Company against loss, in accordance with the Workmen's Compensation Act, filed its petition in the circuit court to be made a party and to be allowed to prosecute an appeal from the award of the board. That petition is in words and figures as follows (omitting the caption):

"PETITION FOR APPEAL.

"The United States Fidelity & Guaranty Company, of Baltimore, Maryland, says that it is a corporation organized under the laws of Maryland and is authorized to do business and write insurance in the state of Kentucky, and that it has written a policy under the Workmen's Compensation Board with Phil Hollenbach Company.

"The matter set forth in the petition covering the accidental death of an employee of the Phil Hollenbach Company was heard and determined by the Workmen's Compensation Board, which determination was, in the

opinion of this carrier of insurance, invalid and erroneous, and it desires that an appeal be taken and its right heard and protected. It says that Phil Hollenbach, president of the insured, refuses to sign and verify the petition and that the law requires a verification of a petition before the appeal from the award or decision or finding of the board, can be taken.

"Wherefore, the United States Fidelity & Guaranty Company comes and prays the court to grant the appeal and permit the filing of the petition herein attached, and grant the prayer of the petitioner and protect the rights of this petition."

To the foregoing petition was attached the following petition (omitting the caption):

"PETITION FOR AN APPEAL FROM THE AWARD, DECISION, FINDING OR ADJUDICATION OF THE WORKMEN'S COMPENSATION BOARD OF THE STATE OF KENTUCKY.

Your petitioner states that on the 10th day of November, A. D. 1916, this case was tried before the Workmen's Compensation Board, and that on the 19th day of December, 1916, the said board made and entered upon its records a finding, award, decision or adjudication, a memorandum of which is filed herewith as part hereof, marked 'Exhibit A.'

Your petitioner states that this board acted without or in excess of its powers, in that the decedent, Phil Hollenbach, Jr., met his death at the time and date as claimed, not by an electric shock, as found by the said board's award, finding, decision or adjudication, as arising out of or in the course of his employment.

There is no evidence to show that he was injured while in the course of his employment, and that he was injured while playing a practical joke upon a fellow employee; that the finding, decision, order, or award is not in conformity with the provisions of the act, because this act only provides for and covers accidents arising out of and in the course of the employment, and that when said Phil Hollenbach, Jr., met his death he was not in the course of his employment—he had ceased to work, and had gone to the toilet to wash up preparatory to leaving, and was not working with or for his employer but was injured by an instrumentality not used in connection with the business of, nor placed there by his employer, which

was placed there by the decedent himself, for the purpose of playing a practical joke. His employer was ignorant of the instrumentality. That there is no evidence to show that the decedent, Phil Hollenbach, Jr., came to his death by accidental injury, or that his death was the proximate result of his coming in contact with a wire charged with electricity.

The evidence does not disclose how and why the decedent came into contact with the wire, and how it became attached to the light socket or into the position in which it was found at the time of the discovery of the decedent on the floor in contact with wire. The evidence shows that the wire served no useful purpose in the master's business, and that the master was ignorant of its being attached there, and did not, and could not, have known of its being there.

There is proof in the record to show that electricity of a frequency of 114 volts is insufficient to cause death by continuous contact of the duration as shown in this case.

The words 'in the course of,' in section 1 of the act, refers to the time, place and circumstances of the employment, and excludes the time, place and circumstances of the accident, if the time, place and circumstances are not within the 'course of the employment.'

The words 'out of' do not refer to the origin or cause of the accident, but refer also to the employment.

An accidental injury occurring to an employee while using the toilet facilities provided for him by his employer, does not 'arise out of or in the course of his employment.'

Willful misconduct must be proven by the defendant, as willful misconduct must be proven in this case; it must not be to the exclusion of everything else.

The burden was upon the plaintiff to show what the accidental injury was, and to show this to the exclusion of all other grounds of injury. The board should not be left in a position or place where it must guess or surmise as to the cause of the death; the board must know, to the exclusion of all other reasonable suppositions, the cause of the injury or death.

It is necessary that the plaintiff should negative every possibility of death, except the one relied upon. The burden is on the plaintiff, and he must show what caused the death. The death of Phil Hollenbach, Jr., was not

the proximate result of an injury *'arising out of or in the course of his employment.'*

Wherefore, your petitioner prays this court for an appeal of this case to this court, and that this court decide all the disputed questions of law and of fact, arising regarding this application in this record, and that the findings of the defendant, the Workmen's Compensation Board of Kentucky be reversed and for all proper relief.''

On the 15th of March, 1917, the respondent, Anna Hollenbach, filed her answer traversing such of the affirmative allegations of the petition for appeal as was deemed necessary, and by the second paragraph she avers that the appeal was not prosecuted in the manner prescribed by section 52 of the act, and sets forth facts in abatement of the appeal. A demurrer was filed to the second paragraph of the answer, and sustained by the trial court.

The board of compensation made the following finding of fact:

"1. The decedent, Phil Hollenbach, Jr., came to his death by accidental injury, and his death was the proximate result of coming in contact with a wire charged with electricity.

2. The evidence does not disclose how or why the wire with which decedent came in contact became attached to the light socket or into the position in which it was found at the time of the discovery of the decedent on the floor in contact with the wire.

3. The wire around the light socket and drawn over the wooden partitions served no useful purpose in the conduct of the master's business and the reason for said attachment is not known.

4. There is no proof in the record that electricity of a frequency of 114 volts is insufficient to cause death by continuous contact of the duration shown in this case.

5. Going to the wash basin for the purpose of using it for toilet facilities was a regular and proper incident of the employment in which the decedent was engaged.''

It also made a finding of law and concluded the award in these wards: "Plaintiff is awarded compensation in the sum of $10.40 per week, for a period of 335 weeks, to be used for the benefit of herself, as widow of Phil Hol-

lenbach, Jr., and her infant daughter, Wilheminia Hollenbach.''

An applicant is not entitled to recover more than sixty-five per cent of the average weekly wage of the injured person, whether killed or not, and $10.40 is sixty-five per cent of $16.00, the weekly wage of Hollenbach. A copy of this award, as well as of all the pleadings and evidence, was certified by the board and filed in the Jefferson circuit court with the petition aforesaid, as provided by section 52 of the compensation act.

It is provided by the act that ''no new or additional evidence may be introduced in the circuit court, except as to the fraud or misconduct of some person engaged in the administration of this act. . . . But the court shall hear the cause upon the record, or abstract, as certified by the board, and shall dispose of the cause in summary manner.'' As no testimony can be introduced in this court, it follows that the evidence before the board alone constitutes the transcript of evidence. Proceeding according to the provisions of the act the circuit court heard the matter in a summary manner and without new or additional evidence, and affirmed the finding of the board, and judgment was entered accordingly and from that judgment so entered by the Jefferson circuit court, the insurance company appeals.

This proceeding is so novel in its features that we deem it proper to a full understanding of its nature to make a brief statement concerning its origin, character and purpose. Acts in their general nature similar to our workmen's compensation law had their origin in Europe more than thirty years ago. In 1897 an act of the same general nature was adopted in England and has since been in force in that kingdom. Since that time a large number of states of this union have adopted similar acts to the one passed in this state in 1916, and under which this cause is being prosecuted. In 1914 our legislature passed a workmen's compensation bill, but it was held unconstitutional by this court in a case styled Kentucky State Journal v. Workmen's Compensation Board, 161 Ky. 562, and extended in 162 Ky. 387. The present act was also assailed as unconstitutional in Green v. Caldwell, Chairman, 170 Ky. 571, but was upheld. The primary purpose and object of this character of legislation was to simplify and facilitate the settlement of all

claims arising out of personal injury to or death of workmen regularly employed by a master in the several occupations named in the acts. It arose, as said in Corpus Juris, from a legislative response to an emphatic, if not a peremptory public demand that a system be afforded whereby employers and employed might escape from personal injury litigation, and every employee, not guilty of willful misconduct, might receive at once a reasonable compensation for injuries accidentally received in his employment under certain fixed rules and without friction. As stated by the Kentucky law: ''This act shall apply to all employers having five or more employees regularly engaged in the same occupation or business, and to their employees, except that it shall not apply to domestic employment, agriculture, steam railways, or those common carriers, other than steam railways, for which a rule of liability is provided by the laws of the United States. It shall effect the liability of employers subject thereto to their employees for personal injuries sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury.''

The common law theory of allowing the servant to recover for his personal injury and his administrator for his death, where the master was negligent, or was guilty of a violation of duty, is largely, if not entirely, superseded by this new system. Compensation under this act is not rested upon the negligence of the master, nor is it defeated by the contributory negligence of the applicant, or claimant, unless the contributory negligence amounts to willful misconduct. As said by the Supreme Court of West Virginia, in the Archibald case, 87 S. E. 791, ''Right of compensation under the statute does not depend upon negligence or fault of the employer, and is not precluded by mere negligence on the part of the employee, causing the injury. It gives compensation for injuries received in the course of and resulting from the employment. It specifically denies compensation for injuries self-inflicted or occasioned by the willful misconduct of the employe, his disobedience of rules and regulations adopted by the employer and approved by the compensation commission, or his intoxication. . . . As Archibald's negligence or carelessness is immaterial, and the injury was incurred manifestly in the course of his em-

ployment, it remains only to determine whether it resulted from the employment.'' Around the subject of negligence we had developed a great system of law and procedure, and much learning of so refined and intricate a nature as to bewilder and stagger many of its most devout students. All this learning will be of little value in administering this act. Because of the frequent clashing of interests of master and servant in the courts the system engendered must strike and widen the breach between capital and labor and often defeated its purpose while attempting to do justice. Thousands of actions were instituted by servants against employers each year, and often were long drawn out legal battles, expensive to both litigants, and frequently productive of very little good to the disabled workman. More than one-half of all such suits so instituted were lost by the injured employee, and a very considerable per cent of the remainder resulted in little material help to him. To avoid this antagonism and to bring capital and labor, natural allies, closer together, as well as to provide a more just and humane basis upon which to adjust such claims, may be attributed the origin of this legislation. The harsh rule of the common law by which the unfortunate workman was required to bear all the burden of loss incident to an accident in his employment which disabled him, if he was guilty of negligence which so contributed to his injury that but for such negligence on his part he would not have been injured, although the master was also guilty of negligence, has been wholly abrogated by this modern system, and a recovery of a workman is not made to depend upon the negligence of a master nor is it defeated by the contributory negligence of the servant, unless it amounts to willful misconduct. The purpose intended to be accomplished by this recent legislation is a fair and just distribution of the burdens or losses which result from accident to an employee while regularly engaged in an effort to produce something which will serve a purpose or fill a demand. The workman who is disabled through accident arising out of his employment is, so far as the final result to the community is concerned, much in the same attitude as a disabled machine in the same shop, and the loss and misfortune in each case are and should be charged to and absorbed by the business. If it takes a man and a machine a given time to produce a given number of pairs of shoes, and the machine be-

comes broken or disabled and new parts must be pur-
chased to repair those broken or worn out, the cost of
the repairs is charged to the business as one of the ele-
ments entering into the cost of production, just as the
price of a day's labor, or the price of material, is charged
as a part of the cost of production, and the whole is dis-
tributed to and borne by the ultimate consumer. This
is eminently fair and just. If that be granted, is the man
who operates the machine and who, while in the regular
course of his employment, disabled through accident
which arises from the nature of the business, entitled to
be treated with less consideration or generosity? An edi-
torial writer in the Outlook illustrates the principle well
by the following:

"When a machine is injured in the course of its use
the owner of the machine bears the cost of the injury
and charges it to the expense of production, for which
he receives payment as he sells his goods. When, how-
ever, a workman is injured in the course of his employ-
ment, the cost of the injury comes upon him, who can ill
afford to bear it; and if his injury is serious, resulting
in long incapacity for work, or in death, his family is
drafted into that great army of dependents that is a re-
proach to our civilization. There is no reason that com-
mon sense can accept why the cost in human efficiency
and human life of the production of the things that people
need should not be charged to the account of that produc-
tion, just as is charged the cost of injury to machinery."

In the July, 1918, number of the Metropolitan, under
the head of "The War of Machines," this appears:
"America manufactures—all the rest of the world makes.
In America the machine is first and the workmen second.
Ask an American to manufacture something and he
thinks in terms of machines.' Ask a European to make
something and he thinks in terms of men. The Ameri-
can workman is a machine operator. He doesn't work.
He runs a machine." In the case of Milwaukee v. Miller,
154 Wis., 652, the court having under consideration the
same subject, declared, "Proper administration of the
workmen's compensation act requires appreciation of the
manifest legislative purpose to abolish the common law
system regarding injuries to employees as unsuited
to modern conditions and conceptions of moral obliga-
tions, and erect in place thereof one based on the highest
present conception of man's humanity to man, and obli-

gations to members of the employee class—one recognizing every personal loss to an employee not self-inflicted, as necessarily entering into the cost of production, and required to be liquidated in the steps ending with consumption.'' This but emphasizes what we have before attempted to say. The loss by injury or destruction of either men or machines, in the nature of things, is and must be a part of the actual cost of production and so considered. This is the principle upon which all legislation under the head of workmen's compensation proceeds.

One question of practice is presented which must be determined. By section 52 of the act, an appeal from an award, or order, of the board may be prosecuted to the circuit court for review if the party desiring such review file, within twenty days after the final order of the board, a petition in the circuit court which would have jurisdiction to try the action for damages for the injuries complained of, if this act had not become a law. The petition must state fully the grounds upon which a review is sought, assign all errors relied on and shall be verified by the petitioner, who shall furnish copies of the petition to the respondent at the time of filing same. Upon this petition summons shall issue, directing the adverse party to file answer within fifteen days after service thereof, and directing the board to certify its complete record of the case to the circuit court, if a complete record be required. In this case the appellant, Hollenbach Company, desired to have a review of the award and on the 18th day after the final order of the board, filed its petition in the office of the clerk of the Jefferson circuit court, praying a review. Copies of the petition were also served upon the respondent, but no summons was issued upon the petition until long after the expiration of the twenty days in which to file the petition. This question was attempted to be raised by demurrer after the respondent had entered her appearance to the appeal in the circuit court, but no motion was made to dismiss the appeal until after appearance was entered. The respondent was entitled to have the appeal dismissed after the expiration of the twenty day period on her motion duly entered for that purpose, before entering her appearance generally to the appeal, and no doubt the circuit court would have promptly sustained such motion and have dismissed

the appeal had such motion been entered. The point is made, however, that the appellant in the circuit court was entitled as a matter of right, to sue out the summons at a subsequent day because of the peculiar language of section 52 of the act. It is also pointed out that there is a wide difference between the practice under the act in this respect and under the Civil Code, section 39, with reference to the commencement of actions in the circuit court. By that section of the Civil Code, "An action is commenced by filing in the office of the clerk of the proper court a petition stating the plaintiff's cause of action; . . . and, . . . by causing a summons to be issued or warning order to be made thereon." Construing this section of the Code it has been held that it is the duty of the clerk to issue summons when the petition has been properly filed, tax paid, and request made for such summons, and the plaintiff will not be prejudiced by the failure of the clerk to perform his duty in this respect. L. & N. R. R. Co. v. Smith, 87 Ky. 501; L. & N. R. R. Co. v. Bowen, 18 R. 1099. It has also been held that filing a petition without causing summons to be issued on it does not stop the running of limitation or create a *lis pendens.* L. & N. R. R. Co. v. Hall, 115 Ky. 567; Cecil v. Sowards, 10 Bush, 96. We must not overlook section 2524 Kentucky Statutes, which reads:

"An action shall be deemed to have been commenced at the date of the first summons or process issued in good faith from the court or tribunal having jurisdiction of the cause of action."

Construing that section in connection with 39 of the Civil Code, it has been held that an action is not commenced until the petition is filed and summons sued out. Casey v. Newport Rolling Mills Co., 156 Ky. 623. It is argued that since the act provides that the appeal for review of the award may be taken within twenty days after the rendition of the final order, by petition, and in a subsequent paragraph of the same section adds: "Summons shall issue upon the petition, etc.," the filing of the petition is in effect the commencement of the action by appeal in the circuit court. We conceive the section, when read as a whole, to mean that the petition must not only be filed within the twenty days after the final order of the board, but summons must be issued thereon within that time, otherwise the very purpose of the act would

be defeated by the delays which the appellant could work by failing to cause a summons to issue. This requirement may be waived by the appellee answering to the merits without objection or motion to dismiss the appeal.

In this case the employment, the application of the law to the employer and employee, injury and death are admitted but the appellants contend:

1. That Hollenbach's death did not arise out of or in the course of his employment, (a) because the accident happened after working hours and while he was engaged in work personal to himself; (b) because the wire which was attached to the electric light socket and which carried the current which killed Hollenbach was not serving any useful purpose in the master's business.

2. The evidence does not support the award of the board.

A recovery can be had under this act by the injured party, if he be living, or his dependents, if he be dead, only upon allegation and proof that the claimant, or his decedent, suffered personal injury by accident arising out of and in the course of his employment. Mr. Dosker, of the Louisville bar, in his excellent book on compensation, page 83, says: "Before an employer is liable to pay compensation four things must be established: First, that the relation of employer and employee existed; second, that both elected in writing to accept the benefits of the act; third, that the employee received a personal injury by accident; fourth, that the accident causing the injury arose both 'out of' and 'in the course of' the employment; and in the case of death it must be established in addition, first, that the death resulted from the injury or was the natural or possible consequence thereof, and, second, that it resulted within two years from the date of the accidental injury. When these conditions are met the employer is absolved from all other liability except when the injury or death was caused by the 'deliberate intention' of the employer to cause it."

It will be observed that the injury must arise out of accident. By the word "accident," as employed in the first section of the act, is meant something unusual, unexpected and undesigned. The text of Corpus Juris, treating on workmen's compensation, says: "The word 'accident,' as used in a compensation act, requiring the injury compensated for, to be by 'accident,' is held to be employed in its ordinary sense as meaning an unlooked

for and untoward event which is not expected or designed; and the term 'accidental' means something unusual, unexpected and undesigned." While this court has defined the word "accident" in negligence cases as an unexpected event happening without negligence, the word as employed in this act includes any unexpected or unusual event happening with or without negligence. It is said Hollenbach's death did not result from electric shock because the voltage (114) was not sufficient to produce death. Decedent was a strong, able-bodied man, in the full enjoyment of his faculties at the time the current struck him. The voltage may have been less than is usually found to produce death. The wire burned into his flesh. The current was so powerful that the other workmen could not take hold of his body long enough to remove him from the wire. He died under the current. In such cases the presumption is that the accident was the cause of death, and this presumption will prevail unless overcome by evidence. As no importance can be attached to this contention of appellant we may proceed upon the idea that all reasonable persons will assent that his death was the result of accident arising in the course of his employment, although it may be contended that it did not arise "out of" the employment. This statement is made because it has been too frequently held that one engaged in preparing himself to leave the premises of the master, at the close of the day's work, is in the course of his employment, to admit of controversy here. It has been further held that the period of going to and returning from work is not limited by the exact time when the workman reaches the scene of his labor and begins it, or when he ceases it, but includes a reasonable time, space and opportunity, before and after, while he is at or near his place of employment. One of the tests sometimes employed is, was the workman still on the premises of his employer? But this is not always a true test. "Injuries may arise out of the employment, although sustained while performing acts essential to the personal comfort and convenience of the employee, as where the employee is injured while going to or from a toilet, or while preparing to begin or leave off work, or in satisfying his thirst, or in obtaining shelter from a storm." Corpus Juris, Workmen's Compensation, page 78. Zabriskie v. Erie Railroad Company, 85 N. J. L.

157; Carinduff v. Gilmore, 7 B. W. C. C. 981; May v. Ison, 7 B. W. C. C. 148; Demann v. Hydraulic Engineering Co., 159 N. W. (Mich.) 380.

A girl employee, combing particles of wool from her hair at the close of the day's work, preparatory to going out, and was injured by her hair catching in the moving machinery, was held to be entitled to compensation and that the injury arose out of the employment. Terlecki v. Strauss, 85 N. J. L. 454.

An injury to one employed by the week, while leaving the premises for the purpose of procuring a luncheon, by means of stairs which are not under the employer's control, but afford the only means of going to and from the workroom, arises out of and in the course of the employment. Sundine's Case (1914), 218 Mass. 1, Post 318, 105 N. E. 433, 5 N. C. C. A. 616.

An employee, dumping hot iron from cars on a cold night, stopped to warm himself by the heated iron before dumping it, and in doing so, another car ran into him and he was injured. He was allowed compensation under the act, the court saying: "To protect himself from undue and unnecessary exposure to the cold was a duty he owed his master as well as himself, and it does not follow that he left his master's employment because he negligently allowed a second car to run into him while he was warming himself." Northwestern Iron Co. v. Industrial Commission, 160 Wis. 633.

In the case of Terlecki v. Strauss, *supra,* it was held that, "the preparation reasonably necessary for beginning work after the employer's premises are reached, and for leaving when the work is over, is a part of the employment. A workman is none the less in the course of his employment because he is engaged in changing his street clothes for his working clothes, or in changing his working clothes for his street clothes."

It was held by the Supreme Court of West Virginia in the Archibald case, *supra,* that acts of ministration by a servant unto himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, and numerous others, readily conceivable, performance of which while at work are reasonably necessary to his health and comfort, are incidents of his employment and acts of service therein, within the meaning of the Workmen's Compensation Act, though, in a sense, they are personal to himself, and only remotely and in-

directly conducive to the object of the employment; and an accidental injury sustained in the performance of such an act is compensable under said statute, as one incurred in the course of the employment and resulting therefrom.·

A woolsorter became infected through a bacillus in the wool he was assorting, and died of anthrax. It was held the accident arose out of and in the course of the employment and he was allowed compensation.

A coal miner was compelled to stand in cold water until he was thoroughly chilled, and in consequence contracted pneumonia and died. He was allowed compensation as it was held that his injury and death were attributable to accident arising out of and in the course of his employment.

In a case where the employer failed to furnish the employee with water that was free from infection, and as a result thereof, the employee contracted typhoid, it was held that the injury was accidental, arose out of and in the course of the employment, and the employee was allowed compensation. A ship's engineer in a very cold place rigged up a temporary stove to warm his cabin, and was asphyxiated. Compensation was allowed although at the time he was ministering to himself and was not performing any duty otherwise connected with his employment. Aloa Coal Co. v. Drylie, 4 Negligence and Compensation Cases Annotated, 899; Vernon v. New Dell's Lumber Co., 161 Wis., 370; Clem v. Chambers Motor Co., 178 Mich. 340; Edmonds v. The Peterson, 28 Times L. R. 18; Morris v. Lambeth, 22 Times L. R. 22; Leach v. Oakley Street & Co., 103 L. T. N. S. 778; Brinton v. Turvey, 1905 Annotated Cases 230; Second Annotated Cases 137.

Undoubtedly, one who is washing, dressing and preparing himself on the master's premises at the close of the day's work, to leave the premises is, in the meaning of the act, in the course of his employment, because all these things are reasonably incident to the day's work.

Many of the courts in this country, as well as in England, have experienced difficulty in determining when an accident arises "out of" the employment. The words, "in the course of" employment have reference to the time, place and circumstances, while the words "arising out of" the employment relate to the cause or source of the accident. "The terms 'out of' and 'in the course of'

are not synonymous, and if either of these elements is missing, there can be no recovery. The two questions are to be determined by different tests. The words 'out of' refer to the origin or cause of the accident, and the words 'in the course of' to the time, place and circumstances under which it occurred. So it has been said that an injury, which occurs while an employee is doing what he might reasonably do at the time and place is one which arises 'out of and in the course of the employment.' '' 1916 A. L. R. A. 232.

In Bryant v. Fissell, 84 N. J. L. 72, it was held that an accident arises ''in the course of the employment'' if it occurs while the employee is doing what a man so employed may reasonably do in the time during which he is reasonably employed, and at a place where he may reasonably be during that time; and it arises ''out of'' the employment when it is something the risk of which may have been contemplated by a reasonable person when entering the employment as incidental thereto.'' The rules of the common law applicable in negligence cases cannot be invoked to determine when an injury by accident arises out of and in the course of the employment. Where death ensues from accident, it is immaterial whether the death was the reasonable and likely consequence of the accident if the death resulted from the injury.

On page 73, Corpus Juris (W. C.) the text is: ''It has been well said that it is not easy to give a comprehensive definition of the words 'arising out of the employment,' which shall actually include all cases within the act, and with precision exclude those without its terms. An injury may be said to arise out of the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. A risk is 'incidental to the employment' when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service. It may be either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment, owing to the special nature of the employment. An injury which is a natural and necessary incident or consequence of the employment, although not foreseen or expected, arises out of it, nor need it be peculiar to the particular employment.'' The same authority further says: ''In determining whether an accident arose out of and in the course of the employment, each case must be decided

with reference to its own attendant circumstances; and it has indeed been stated rather broadly but by eminent authority that argument by analogy is valueless.''

Did the accident which caused the death of Hollenbach arise out of the employment? He was on the master's premises engaged, while washing himself, preparatory to going home. That was a reasonable incident of the employment and he was pursuing it in the usual and ordinary way. The wash basin had been provided by the master for the use of the servants in the basement. The employees were expected to use the basin for lavatory purposes each day. The master also employed the electric current in his business and it was a necessary incident thereof. Electricity is an unfathomed and dangerous instrumentality. It was on the premises, a part of the business, and one of the inherent dangers thereof. Was it not the source and cause of the death of Hollenbach? We are unable to see why his injury and death were not accidents arising out of and in the course of the employment, for the producing cause was so connected with and related to the business of the master as to be an inseparable part of it. In McNicol's case, decided by the Supreme Court of Massachusetts, the question of whether the accident arose out of the employment was considered, and the court said: ''It (the accident) arises out of the employment, when there is apparent to the rational mind upon consideration of all the circumstances a causal connection between the condition under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.'' Hollenbach was at the place of his employment engaged in performing an incident of the employment and was injured by accident which was occasioned by electricity, a necessary agency in the business, and his death resulted. To the rational mind, the whole facts and circumstances considered, it is apparent that the accident grew out of and bears a causal relation to the natural hazards of the business. Pursuing the same subject in the McNicol case, *supra,* the court said: ''It (the accident) need not have been foreseen or expected, but after the event it must appear to have had its origin in the

risk connected with the employment and to have flowed from that source as a rational consequence.''

The point is made that Hollenbach, or one of his fellow-workmen, in the basement, placed the wire in the position it was at the time of the accident in order to play a practical joke on any person attempting to make use of the wash basin, and that this was foreign to the employment and therefore, no recovery can be had under the act. Ordinarily one injured while engaged in horse play, in perpetrating a practical joke, or in some frolicsome prank, is not entitled to compensation under the act, but there are exceptions to this general rule. One of the exceptions is where the injured employee is himself at his usual employment and not engaged in the play or joke, and the injury is caused by the sportive act of his fellows. Thus it was held in Knopp v. American Car and Foundry Co., 186 Ill. App. 605, that an injury to an employee engaged in operating a trip hammer, which was caused by a stranger, in fun, placing a tin can under the hammer, when the employee took no part in the sport, was entitled to compensation as the accident arose out of the employment. The evidence in this case wholly fails to show that Hollenbach was responsible for the wire being attached to the light socket, or that he knew of its connection. Had he known of the wire at the wash basin, it may be presumed he would not have attempted to use the basin, especially had he placed it there to play a joke on a companion. Nor can it be contended that decedent was guilty of willful misconduct, as used in the act, because he was in the performance of the regular routine of his employment and was not guilty of any act which was willfully designed to produce injury.

After a careful perusal of all of the evidence introduced before the board, we are firmly of opinion that the finding of fact of the board, as set forth in the award in this case, accords with the proof and is fully justified thereby. If we were not of opinion that the great weight of the evidence supports the award, nevertheless, we would not feel justified in ordering a reversal, unless the finding of fact was clearly, flagrantly and palpably against the weight of the evidence. By the terms of the act, section 52, courts reviewing the proceedings of the board shall hear the cause upon the record, or abstract thereof, as certified by the board, and shall dispose of the cause in summary manner, its review being limited to

determining whether the findings of fact support the award. By the words "summary manner," as commonly employed in statutes, is meant a short, concise and immediate proceeding. A summary proceeding, as defined in Cyc. is a trial in which the ancient established course of legal proceeding is disregarded, especially in the matter of trial, by a jury, and in the case of the heavier crimes, presentment by a grand jury. Motions and other proceedings against clerks of courts for breach of duty, against sheriffs and constables for misconduct in office, and against an attorney for a wrong done in a professional capacity, are cited as examples of summary proceedings. On page 245 of Dosker's work on compensation, the author says:

"The awards or orders of the board, whether of one member, where application for review by the full board is not made, or by the full board are, in absence of fraud, conclusive and binding as to all questions of fact. But if it is found on appeal that there is no evidence to warrant a finding of fact, the court may set aside the finding of fact made by the board. As was said in Milwaukee Coke & Gas Co. v. Industrial Commission, 160 Wis. 247, 'If there was substantial or credible evidence supporting the finding of the commission, the court can not interfere.' This is the general rule even under laws where the intention of the legislature is not as clearly expressed as it is here. The Wisconsin act is quite similar to the Kentucky law in this particular as will be seen from the following statement of the Wisconsin court in the case of the City of Milwaukee v. Industrial Commission, 160 Wis. 238: 'As a preliminary to the determination of each one of the questions raised, it is proper to again call attention to the fact that, in the absence of fraud, the findings of fact made by the Industrial Commission are conclusive, and its order or award can be set aside only upon the ground (1) that it acted without or in excess of its powers; (2) that it was procured by fraud; or, (3) that its findings of fact do not support the order or award. . . . International Harvester Co. v. Industrial Commission, 157 Wis. 167, 147 N. W. 53, 5 N. C. C. A. 822. But it should be borne in mind that if in any reasonable view of the evidence, it will support either directly or by fair inference, the findings made by the commission, then such findings are conclusive upon the court. . . .

It was not the scheme of the act to make the court a reviewer of facts. Its office is to relieve against fraud, to keep the commission within its jurisdictional bounds, and to correct an award not supported by the facts found.' "

In support of the rule that the findings of fact by the board, if supported by evidence, is conclusive upon the courts the following cases are cited: Borgins v. Falk Co. 147 Wis. 327; Milwaukee Western Fuel Co. v. Ind. Comm., 159 Wis. 635; Pocardi v. Public Service Comm., 84 S. E. 242 —— West Va. ——; Hotel Bond Co.'s Appeal, 89 Conn. 143; Cain v. Nat. Zinc Co., 94 Kan. 679; Johnson's case, 217 Mass. 388; Weber v. American Silk Spinning Co., 95 Atl. 603; Buckley's Case, 218 Mass. 354; Rayner v. Sligh Furniture Co., 180 Mich. 168; Goldstein v. Center Iron Works, 167 App. Div. 526; Sexton v. Newark Dist. Telg. Co., 84 N. J. L. 85; Nelson-Spelliscy Imp. Co. v. Dist. Ct., 128 Minn. 221.

One of the primary purposes of the act was the establishment of a board which would summarily determine all questions of fact, and afford ready relief to claimants. Another object to be accomplished was the settlement of claims by a method in the nature of arbitration instead of by prolonged litigation, and a third reason was the relief of the courts, even where appealed to, from the necessity of passing upon questions of fact. It is the duty of the board to make findings of fact and if there be competent and credible evidence tending to support the award, or finding of fact, it, like the verdict of a properly instructed jury, will not be disturbed by a court in review. The courts of Wisconsin, California, Michigan, New York, and perhaps other states, hold that if there be competent, credible evidence supporting the award, a reversal can not be had upon this ground, although other evidence wholly incompetent in courts of law be received by the board. Long ago we adopted the rule of giving the same weight to the finding of fact of a court, where both the law and facts are submitted to it, as to the verdict of a properly instructed jury. Cincinnati Grain Co. v. L. & N. R. R. Co., 146 Ky. 237; Excelsior Coal Mining Co. v. Gatliff, 69 S. W. 798; Board of Trustees v. Morris, 71 S. W. 654. We perceive no material distinction between a finding of fact required to be made by a compensation board, and that of a court or jury, and we believe such finding of fact of the board is

entitled to the same weight as that of a properly instructed jury. This, we conceive to be the general rule adopted by courts throughout the states of this country where the workmen's compensation law is in force. A contrary rule is universally applied with reference to the findings of law by the board.

By section 102 of the act, it is provided that the rule of law requiring strict construction of statutes in derogation of the common law shall not apply to this act. The courts generally have held that the common law rules applicable in negligence cases have no place in this procedure. The act is complete and provides a plan for its enforcement. Corpus Juris, page 40, says: "The courts have been practically unanimous in according to the workmen's compensation acts a broad and liberal construction in order to effectuate their evident intent and purpose, although in some decisions it has been held that being in derogation of the common law, they must be strictly construed. Under the rule of liberal construction, however, the courts cannot go to the extent of judicial legislation, the words employed must be given their ordinary meaning, separate provisions must be construed in the light of the statute as a whole, and conflicting provisions reconciled as far as possible, but where the language is plain it must be given its evident effect." It would seem to follow, therefore, that this act must be liberally construed with a view to effectuating the intention of its framers. As was aptly stated in the case of the Commonwealth v. The Herald Publishing Co., 128 Ky. 324: "The spirit of the law and not the letter should control its construction, and the object to be accomplished should be considered," has application here.

While we have no adjudged cases of our own to guide us in the construction and enforcement of this act, we have carefully considered a great number of opinions and decisions from other jurisdictions with a view of getting at the spirit as well as conforming to precedent established by courts which have had occasion to consider similar questions. The text and notes of Cyc., Corpus Juris, Negligence and Compensation Cases Annotated, Dosker's Work on Compensation, and other like treatises will be found very helpful. The annotations found under the subject of Workmen's Compensation in 1916a, 1916b, 1916d, 1917e, 1917f, and 1918a, L. R. A., comprise a great number of cases shedding light upon the subject.

Having reached the conclusion that Phil Hollenbach, Jr., came to his death through accident arising out of and in the course of his employment, and that the evidence fully supports the award, it follows that the dependents, the widow and infant child, are entitled to compensation, and the judgment is affirmed.

Whole court sitting.