**MIDDLEKAMP et al.   v.   WILLIS et al.**

Court of Appeals of Kentucky.

Dec. 4, 1953.

Rehearing Denied May 21, 1954.

See also Ky., 253 S.W.2d 631.

Thomas S. Dawson, Bullitt, Dawson & Tarrant, Louisville, for appellants.

J. D. Buckman, Atty. Gen., Squire N. Williams, Asst. Atty. Gen., for appellees.

DUNCAN, Justice.

This consolidated appeal is from two judgments of the lower court sustaining directory and mandatory orders of the Commissioner of Industrial Relations dated August 25, 1950 and July 19, 1951, respectively. The two orders established new minimum wage rates for female and minor employees in the hotel and restaurant industry in Kentucky, ranging from 60¢ per hour for non-service employees and 45¢ per hour for service employees in Zone 1 to 56¢ per hour for non-service employees and 41¢ per hour for service employees in Zone 3. The distinction between service and non-service employees as defined by the orders will be discussed at a later point in the opinion.

In 1949, a Wage Board for the hotel and restaurant industry was appointed by the Governor on representation by the Commissioner of Industrial Relations that oppressive and unreasonable wages were being paid to a substantial number of persons in that industry.

At that time, there was a minimum wage rate in effect for this industry under a mandatory order of the Commissioner issued on April 1, 1943, which established a minimum wage rate of 30¢ per hour for non-service employees and 25¢ per hour for service employees in Zone 1. That order divided the state into four zones, and the rates varied downward to 22¢ per hour for non-service employees and 20¢ for service employees in Zone 4.

On November 10, 1949, the Wage Board held a hearing for the purpose of recommending a new minimum wage, and in due course, its report was made to the Commissioner. As required by the statute, the Commissioner held public hearings on the question of accepting or rejecting the recommendation of the Board. The hearings before the Commissioner were commenced on February 9, 1950, and were concluded on August 18 of the same year. On August 25, 1950, the Commissioner accepted the recommendations of the Board and entered the directory order. Subsequently, on July 19, 1951, a mandatory order was issued.

The question presented is entirely one of fact, and our right of review is limited by statute and our construction of comparable statutes governing review of findings of fact by other administrative agencies to a determination of whether or not the finding of the Commissioner is supported by what is variously described as substantial evidence, evidence of substance, or evidence of probative value. KRS 337.-

310. Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524; Shrader v. Commonwealth, 309 Ky. 553, 218 S.W.2d 406. Notwithstanding the limited scope of our right of review, it is clear that if the record discloses that the Commissioner failed to give proper effect to the standards set up in the Act, or if there is no evidence or factual data in the record upon which the rates established by the orders can be based, these judgments are erroneous and must be reversed.

■ The statutory factors to be considered in fixing the minimum wage are the cost of living and all other circumstances affecting the value or class of service rendered, including wages paid in the state for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards. KRS 337.-230. We are invited by appellant to indicate with more certainty than the statute affords the factors which should enter into the fixing of a minimum wage rate. We think the clarification of the statute is a legislative function, and it would be improper for us to indicate with particularity all of the factors which should enter into the fixing of minimum wage rates in all cases. There will be indicated throughout the course of the opinion, however, the factors which we think should properly have entered into a fixing of the rates under the orders here involved.

The testimony is voluminous, consisting of eleven separate volumes and numerous exhibits. No useful purpose would be served by a detailed discussion of all the evidence which is introduced, and to do so would extend this opinion beyond all reasonable limits.

Evidence for the employers, which is undisputed, indicates that the new rates would indirectly affect 83% of the women employed in the industry or at least 8,860 female employees. The orders would result in a direct increase in the payroll of the industry of over $2,000,000, and because of the necessary effect on other employees not directly affected, an indirect increase of over $4,000,000.

A comparison, by zones, of the 1943 minimum rates with those established by the new orders shows that in some instances the proposed increase amounts to 155% or over 2½ times the existing rate. The average increase brought about by the new orders is 110%. The Consumers Price Index, issued by the Bureau of Labor Statistics of the United States Department of Labor, shows an increase in the cost of living from January, 1942 to January, 1950 of slightly less than 47%. It is apparent, therefore, that the increase effected by the present orders is more than twice as much as the rise in living cost between the dates of the first and second orders.

The cost of living budget, relied upon in support of the orders, reflects a substantial increase in quantities, as well as prices, over the 1942 budget supporting the 1943 order. As further reflecting the inaccuracy of the latest budget, we note that it is practically 100% higher than the 1942 budget. Such an increase is entirely disproportionate with the rise in the cost of living between the two dates, as reflected by the Consumers Price Index.

Considering other factors entering into the fixing of a minimum wage scale, it is significant that a comparison of rates with eighteen other states and the District of Columbia, in which minimum wages have been established by statute or administrative orders covering this industry, discloses that only four states have rates in excess of those established by the orders appealed from. The other states have minimum rates ranging from 15¢ in Arkansas to 50¢ in Nevada and Massachusetts. The District of Columbia and eight of the states used in this comparison had, as of January, 1950, increased the rates which were in effect in 1940. The average rate of increase in the states which have made a change in the ten-year period is 55%, as compared with increases ranging from 100 to 155% in Kentucky.

The economy in Kentucky, as compared with other states in which minimum wage rates have been established, apparently was not considered by the Board or the Com-

missioner. In California, where the minimum wage rate is 65¢ per hour, the per capita income is $1,650. The national average per capita income is $1,325, while it is only $850 in Kentucky. Applying to the new rate in this state the ratio between minimum rates and per capita income in other states, we find that Kentucky, under the orders here involved, would have the highest minimum wage scale in the United States as applied to the hotel and restaurant industry.

The evidence also discloses that the impact of such a wage increase upon the industry might result in closing many of the smaller restaurants in Kentucky. An extensive survey, conducted on behalf of the employers by a Certified Public Accountant in each of the zones, indicates that the cost of restaurant sales ranges generally from 46.1% to 62.8% of the total amount of the sales. This leaves an average of 26.9% of gross sales from which employees' wages must be paid and the owner derive his compensation and profit from the operation. After the payment of wages under the 1943 rates, the average percentage of profit is 5.8%, ranging from a low of 1.9% to a high of 17.2%. Under the proposed increase, the average profit would be reduced to 3.1%, ranging from a low of .6% to 6.7%. This range of profit is far below what may be considered as a safe operating margin.

■ A good part of the testimony in support of the orders consists of opinions and conclusions of witnesses, which, although competent in this type proceeding, are entitled to little weight unless supported by the facts upon which they are based. The cost of living budget from which the conclusions are drawn is unrealistic, and many factors which should have entered into the fixing of the wage rate were not considered. On the whole record, we do not think there is substantial evidence supporting the minimum wage rates fixed by the orders.

■ The record abundantly supports the conclusion that the minimum wages fixed by the 1943 order are unreasonable and oppressive as measured by conditions in 1949. Counsel for appellees suggest that notwithstanding this fact the right of judicial review does not include the power to direct minimum rates which should be fixed in lieu of those prescribed by the orders appealed from. We do not so construe KRS 337.310(3). The statute expressly provides that the circuit court, upon review, may enter judgment affirming, modifying, or setting aside the order or decision of the Commissioner. It would seem pointless to completely set aside the order and thus require a new beginning of the statutory process for the establishment of a new wage order.

■ We do not think any minimum wage in excess of the following rates is supported by the record, considered in the light most favorable to the employees affected:

Zone 1—45¢ per hour for non-service employees
　　　30¢ per hour for service employees

Zone 2—43¢ per hour for non-service employees
　　　28¢ per hour for service employees

Zone 3—41¢ per hour for non-service employees
　　　26¢ per hour for service employees

We emphasize that the wages indicated herein are based upon conditions shown to exist in November, 1949. All of the evidence and data before us relate to that approximate date, and it is, therefore, impossible to suggest a minimum wage based upon current conditions.

The orders define a service employee as "a person who is solely engaged in the taking of orders and serving food or beverage to a guest or customer seated at a table (not a counter or bar); or the delivering of messages or articles such as by one commonly designated as a bellboy." All other employees are classified as non-service.

■ The evidence as to the amount and extent of tipping both in hotels and inde-

pendent restaurants throughout the state is meager. However, neither party questions the fact that it is proper to establish different minimum wage rates as they relate to employees who do or do not receive tips.

 It appears from the record that in many independent restaurants and hotels employees, who otherwise would come within the service designation, perform some minor duties which might remove them from that classification if the word "solely" is strictly construed. For example, waitresses may make coffee, salad, or occasionally wait on a customer seated at a counter or bar. A strict interpretation of the orders as written might, therefore, result in a classification of service employees as nonservice, notwithstanding the fact that their principal duties enabled them to receive tips. We think the orders should be further modified by defining a service employee as "a person who is principally engaged in the taking of orders and serving food or beverage to a guest or customer seated at a table (not a counter or bar); or the delivering of messages or articles such as by one commonly designated as a bellboy."

The judgment is reversed, and the lower court is directed to enter a judgment requiring the Commissioner to modify the orders as to minimum wage rates and definition of non-service employees as indicated in this opinion.

COMBS, J., dissenting.

COMBS, Justice (dissenting).

I would affirm the judgment.

It is correctly stated in the majority opinion that our right of review in this case is limited by statute to the single question whether the findings of facts support the order of the Commissioner. KRS 337.310. I find substantial proof in this voluminous record to sustain the Commissioner's order.

The testimony of Beulah DuVall, senior inspector of the Department of Industrial Relations and that of George Burton, former Commissioner of Industrial Relations, constitutes evidence of probative value which in my opinion is sufficient to support the findings of the Wage Board and to sustain the Commissioner's order. There is other evidence of a substantial nature to the same effect.

This court should not try this case de novo; neither should it act as a wage board and attempt to evaluate evidence and fix wages when the legislative department has delegated and entrusted such task by statute to an administrative agency.

For the reasons stated, I respectfully dissent.