**Wanda JONES and Ralph Jones, Appellants**

v.

**Cynthia DOUGHERTY and Christian County Board of Education, Appellees.**

**No. 2010–CA–001985–MR.**

Court of Appeals of Kentucky.

Dec. 14, 2012.

Discretionary Review Denied by Supreme Court Nov. 13, 2013.

Thomas L. Osborne, Paducah, KY, for appellants.

Terrance J. Janes, Hopkinsville, KY, Regina A. Jackson, Bowling Green, KY, for appellee Cynthia Dougherty.

Timothy J. Walker, Lydia M. Simmons, Lexington, KY, for appellee Christian County Board of Education.

Before CLAYTON, KELLER, and MAZE, Judges.

## OPINION

KELLER, Judge:

Wanda Jones (Wanda) and her husband, Ralph (collectively the Appellants), appeal from the trial court's summary judgment in favor of Cynthia Dougherty (Dougherty) and the Christian County Board of Education (the Board). On appeal, the Appellants argue that they presented sufficient evidence of Dougherty's "willful and un-

provoked physical aggression" to overcome the exclusive remedy provisions of the workers' compensation act, Kentucky Revised Statute (KRS) Chapter 342 (the Act). It also appears that the Appellants are arguing that the trial court's judgment was defective because it did not sufficiently address Wanda's testimony. The Appellees argue to the contrary. Additionally, both of the Appellees have asked this Court to strike the Appellants' brief and Dougherty has asked this Court to strike their appeal. Having reviewed the record, we decline to strike the Appellants' brief or their appeal, and we affirm the trial court.

## FACTS

Because this is before us on appeal from a summary judgment, we rely on the facts most favorable to the Appellants. *See Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991).

In December 2006, the Christian County Board of Education employed Wanda as a classified teacher and Dougherty as an assistant principal at Hopkinsville High School. Wanda's job duties included several administrative tasks associated with the school's special education program; therefore, she had a small office in the administrative suite of offices at the school.

According to Wanda, Dougherty was holding a snake when she entered Wanda's office on December 6, 2006. Wanda, who was completing paperwork, looked up, saw the snake, "jumped out of [her]seat and started screaming and ran into the concrete wall" that was behind her chair. She continued "screaming and screaming and screaming, and [Dougherty] just stood there. The snake had its head up and its tongue sticking out like it was about to strike. And [Dougherty] just stood there and laughed and said that [Wanda] must be a sissy because she's afraid of my friend." Wanda's aid "finally got [Dougherty] to leave the office, and [Wanda] was just screaming." Wanda alleges that, as a result of this incident, she suffered injuries to her knees and heart, as well as post traumatic stress syndrome. Ralph alleges that he has suffered a loss of consortium because of Wanda's injuries.

We note that Wanda testified that she has always been afraid of snakes. However, she had not communicated that fear to anyone before this incident.

On December 6, 2007, the Appellants filed a complaint alleging that Dougherty "intentionally and maliciously carried a large snake into" Wanda's office, causing her injuries. The Appellees filed their respective answers to the complaint and asserted immunity from liability under the Act's exclusive remedy provisions. The Appellees then forwarded interrogatories, requests for production of documents, and requests for admissions to the Appellants. In her interrogatories, Dougherty asked the Appellants to identify who would have knowledge that Dougherty acted intentionally and maliciously when she took the snake into Wanda's office. The Appellants responded that Wanda's aid and "other possible school employees and/or administrators" might have the information. Dougherty also asked the Appellants to admit that Dougherty "did not specifically intend to kill or cause serious physical injury to Wanda...." The Appellants denied that request for admission stating that they did not know what Dougherty's intent was. In response to the Board's interrogatory regarding whether they contended that Dougherty intended to kill or seriously injure Wanda, the Appellants responded that, "This information is currently not available and will be supplemented at a later date." The Appellants did not supplement their responses.

The Appellees then filed motions for summary judgment. In support of her motion, Dougherty offered her version of events that differed significantly from Wanda's. According to Dougherty, she was showing the snake to personnel in the administrative offices because a student's mother had brought it to school for a science class. Dougherty stated that she did not enter Wanda's office but remained in the doorway. Dougherty admitted that Wanda seemed surprised when she looked up and saw the snake. However, Dougherty did not say that Wanda screamed or that she jumped from her chair and ran into the wall. Furthermore, Dougherty stated that she was only in the doorway to Wanda's office for approximately ten seconds and that the snake was curled up in her arms and not moving. Dougherty argued that, based on her version of events, the Appellants could not overcome the exclusive remedy provisions of the Act. The Board, relying on Dougherty's version of events, made essentially the same argument.

In response, the Appellants argued that Dougherty's actions—staying in the office when Wanda was obviously frightened, laughing at Wanda, and calling Wanda a "sissy"—were sufficient indicia of intent to harm to create a question of fact for the jury. In support of their argument, the Appellants attached the transcript of Wanda's deposition from her workers' compensation claim. Wanda's testimony therein is consistent with her version of events as set forth at the beginning of this section.

Approximately eleven months after receiving the Appellants' response, the court granted the Appellees' motions. In the order granting the Board's motion, the court found that Wanda and Dougherty were both acting within the scope of their employment; that the Board had secured workers' compensation coverage; that Wanda had filed a claim for workers' compensation benefits; and that

> the conduct of Ms. Dougherty in allegedly causing the subject injury to [Wanda] did not constitute "willful and unprovoked physical aggression" as that term is used in KRS 342.690(1); and that [Wanda's] alleged injury was not the result of the [Board's] deliberate intention to cause injury or death within the meaning of KRS 342.610(4); and that there is no genuine issue of material fact as to any of the foregoing points.

In the order granting Dougherty's motion, the court simply stated that the Appellants' complaint was dismissed with prejudice. The Appellants appealed from these two orders.

Before we address the issues raised by the Appellants in their brief, we must address the procedural issues raised by the Appellees. As noted above, both Appellees have asked us to strike the Appellants' brief and Dougherty has asked us to dismiss this appeal.

The Board argues that the Appellants' brief should be stricken because it cites to evidence not of record, in violation of Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(iv) and (v). Pursuant to those rules, the statement of the case and argument sections of briefs should contain specific references to where in the record facts are located and issues were preserved. The Board notes that the Appellants' brief makes references to evidence in her workers' compensation claim that is not part of the record herein. We agree that the Appellants make those references; however, we believe that simply ignoring those references is a better remedy than striking the Appellants' brief. Therefore, we will ignore any references by the Appellants to evidence that is not of record herein.

Dougherty asks us to strike the Appellants' brief and to dismiss their appeal because they did not comply with CR 76.03. CR 76.03(4) provides that all appellants must file a prehearing statement setting forth, in pertinent part, "[a] brief statement of the facts and issues proposed to be raised on appeal...." CR 76.03(8) provides that "[a] party shall be limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion."

In their prehearing statement, the Appellants stated as follows:

> The case was dismissed because Plaintiff teacher Wanda Jones had a workers [sic] compensation claim pending. However, the law is clear that a pending workers [sic] compensation claim is insufficient to dismiss a common law action for negligence unless the Defendant has paid a settlement under the Workers [sic] Compensation Act.

Dougherty notes that, rather than arguing the above issue, the Appellants argue, primarily, that the trial court misapplied the exclusive remedy provisions of the Act. We agree with Dougherty that the Appellants did not correctly identify in their prehearing statement the issue they primarily argue on appeal. However, we note that the penalties for failure to comply with the provisions of CR 76.03 run from assessing attorney's fees to dismissal of the appeal. *See* CR 76.03(14). Because the parties are and have been well aware of what the primary issue is in this case, we neither dismiss this appeal nor strike the Appellants' brief.

## STANDARD OF REVIEW

Summary judgment is only proper when "it would be impossible for the respondent to produce any evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). In ruling on a motion for summary judgment, the trial court is required to construe the record "in a light most favorable to the party opposing the motion ... and all doubts are to be resolved in his favor." *Id.* at 480. On appeal, we review the trial court to determine if it "correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996). With these standards in mind, we address the issues raised by the Appellants on appeal.

## ANALYSIS

### 1. Application of the Exclusive Remedy Provisions of the Act

■ In pertinent part, KRS 342.690(1) provides that the Act is the exclusive remedy for an employee who is injured while working for an insured or self-insured employer. Thus, an insured employer is exempt from liability for non-workers' compensation damages for injuries that occur to employees during the course of their employment. This exemption from liability extends to an employer's insurance carrier and other employees.

However, the Act provides two circumstances when the exemption does not apply. The first is if the employer intentionally injures the employee. KRS 342.610(4). There is no evidence that the Board, Wanda's employer, harmed or intended to harm Wanda. Therefore, we need not further address this exception to the exclusive remedy provisions of the Act.

The second is when an injury was "proximately caused by the willful and unprovoked physical aggression" of a co-employee. KRS 342.690(1). The Appellants

argue that Dougherty's actions amounted to such aggression, thus negating the exclusive remedy provisions of the Act. We disagree.

■ Initially, we note that the Act does not define "willful and unprovoked physical aggression" or any of the individual words in that phrase. Therefore, we look to the commonly understood meaning of the words. *See Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky.2005). "Willful" means "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* 1593 (7th ed.1999). "Unprovoked" means without cause or instigation; "physical" means "of the body, as opposed to the mind;" and "aggression" means "an unprovoked attack or act of hostility." *See New Twentieth Webster's Century Unabridged Dictionary* (2d ed.1979). Thus, for purposes of this appeal, "willful and unprovoked physical aggression" means an intentional attack or act of hostility, with or without malice, by a co-employee that was not instigated or caused by the injured employee.

Next, we note that there is a significant amount of case law addressing what constitutes an intentional act by an employer under KRS 342.610(4); however, we have found no case law that directly addresses what constitutes willful and unprovoked physical aggression by a co-employee under KRS 342.690(1).

Dougherty cites us to *Haines v. BellSouth Telecommunications, Inc.,* 133 S.W.3d 497, 498 (Ky.App.2004), for the proposition that a claimant must show "ill intent" in order to overcome the exclusive remedy provisions of the Act. While *Haines* does provide some instruction, it is not directly on point. In *Haines,* the evidence indicated that a supervisor would occasionally sound a boat horn as part of an employee motivation plan. The supervisor, not knowing Haines was standing around the corner, sounded the boat horn and Haines suffered significant hearing loss. Haines sued the supervisor in circuit court. The court granted the supervisor's motion for summary judgment based on the exclusive remedy provisions of the Act.

On appeal, this Court determined that the supervisor was acting within the scope of his employment when he sounded the boat horn and was thus entitled to the Act's exemption from liability. Furthermore, we determined that the supervisor's actions would not be deemed "horseplay" so as to negate the exemption. It is in undertaking the horseplay analysis that we discussed "ill intent," finding that some ill intent was necessary to establish that the supervisor was engaged in horseplay. We found no such intent and affirmed the lower court's summary judgment.

■ The Appellants have not argued that Dougherty was engaged in horseplay, which is defined as an action independent of and not connected with work. *See Hayes Freight Lines, Inc. v. Burns,* 290 S.W.2d 836 (Ky.1956). Rather, they have argued that Dougherty engaged in an act of willful and unprovoked aggression. Thus, the *Haines* analysis regarding horseplay does not directly apply to this matter.

However, while *Haines* is not directly on point, it is instructive. As noted by this Court in *Haines,* a trial court should consider whether a co-employee's "actions were 'so far removed from those which would ordinarily be anticipated by the employer'" as to remove the co-employee "from the course of his employment" when applying the horseplay exemption to the exclusive remedy provisions of the Act. 133 S.W.3d at 500. In undertaking that analysis, the court may look to what the co-employee intended. *Id.*

■ We discern no reason why the *Haines* analysis should not apply to a claim involving willful and unprovoked aggression. As we held in *Haines,* actions by a co-employee that fall outside what would ordinarily be anticipated by the employer negate the exclusive remedy provisions of the Act. Like the horseplay in *Haines,* willful and unprovoked physically aggression by co-employees falls outside what an employer would ordinarily anticipate. Therefore, such actions by a co-employee may negate the exclusive remedy provisions of the Act. Furthermore, although intent is not specifically listed as a factor in KRS 342.690(1), the definition of "aggression"—an unprovoked attack or act of hostility—clearly implies such intent. As with horseplay, a court may take into account the intent of a co-employee when determining whether that co-employee's actions constituted willful and unprovoked physical aggression.

■ Viewing the evidence in a light most favorable to the Appellants, the circuit court correctly determined the Appellants could not prove that Dougherty's actions amounted to willful and unprovoked physical aggression.

Dougherty stated that she took the snake from a parent who had brought it to school for her daughter's science class and showed it to office personnel. The Appellants have offered no evidence that Dougherty's actions, in and of themselves, were so far removed from those which would ordinarily be anticipated by her employer as to remove her from the course of her employment. However, as in *Haines,* our analysis cannot stop there. We must also determine if there was any evidence that Dougherty acted with aggression or hostility toward Wanda. The Appellants have failed to establish that Dougherty did so. Dougherty did take the snake into Wanda's office, but Dougherty did not know that Wanda had a fear of snakes. Furthermore, there is no evidence that Dougherty threatened to touch or touched Wanda with the snake, or that she pushed or thrust the snake toward Wanda. Absent any such evidence of aggression or hostility, Dougherty's actions fell within the scope of her employment and she is covered by the exclusive remedy provisions of the Act.

Because the Appellants failed to show that Dougherty acted outside the scope of her employment and/or that she acted aggressively toward Wanda, the trial court correctly determined that the Appellants had failed to provide evidence that Dougherty's actions constituted willful and unprovoked aggression.

2. Adequacy of Trial Court's Orders

■ The Appellants argue that the court's orders granting summary judgment are defective because they do not specifically refer to Wanda's testimony. The trial court is not required to make findings of fact when granting or denying a motion for summary judgment. CR 52.01. Therefore, there is no error in the court's failure to specifically refer to or summarize Wanda's testimony.

CONCLUSION

For the foregoing reasons, we affirm the trial court's summary judgment.

ALL CONCUR.